IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)

DANIEL W. PHOENIX, PRO SE,
    PLAINTIFF,

V.                          CASE NO: 3:23cv316

HAROLD W. CLARKE, et al.,
    DEFENDANTS.

## AMENDED COMPLAINT

    Comes Now the plaintiff Daniel W. Phoenix, inmate number 1190078, residing at the State Farm Corr. Center in State Farm Virginia to provide this Honorable Court with his amended Complaint as Ordered by this Court on 2 December 2024, (Doc 34). For this Honorable Court's consideration and to satisfy its Order, the plaintiff offer the following;

    <u>1.</u>   Amended Complaint. See Attachment I.

    The plaintiff hopes and prays this satisfies the COurts Order and this civil action can move forward as a matter of due course.

Respectfully
Daniel W. Phoenix
1190078
17 January 2025

# AMENDED COMPLAINT FOR CIVIL ACTION NUMBER 3:23CV316

## I. Defendants

1. Daniel W. Phoenix has brought this Civil Action against the following Defendants alleging an 8th Amendment Violation stemming from thier deliberate indifference to his serious medical condition of diagnosed hearing loss and tinnitus which also violated his Americans with Disabilities rights by not providing Hearing Aids. These Defendants in this suit are as follows:

   A. Harold W. Clarke, The Former Director of the VADOC who was made aware personally through certified signature letters requesting help and corrections to his 8th amendment violations and the violations to his ADA rights but provided no corrections.

   B. Mrak Amonette, was the Chief Medical Director for the VADOC who was made aware personally through certified letters requesting corrections to the violations of ("Phoenix's") 8th amendment rights and ADA rights but provided no corrections to his medical care and services.

   C. Steve Herrick is the Health Services Director who was made personally aware of the violations to ("Phoenix's") 8th amendment rights violation and ADA rights violations through letters and the grievence system requesting corrections to the violations but Herrick ignored the pleas for help and provided no corrections to the violations of rights.

   D. Darrell Miller, Warden of Deerfield Corr. Center who was made personally aware of the violations to ("Phoenix's") 8th amendment rights and ADA rights through Personal meetings, the grievence system, letters requesting help and through an institutional investigation but Miller ignored the pleas for help and offered no corrections to ("Phoenix's") rights.

   E. Dana Watson, The Warden of St. Brides Corr. Center who was made personally aware of the violations to ("Phoenix's') 8th amendment rights violations and ADA rights through Certified letters, the grievence system and institutional investigations yet she failed to provide any corrections to ("Phoenix's") rights violations and offered no corrections.

   F. Jerry D. Oates, was the former Asst. Warden at the Deerfield Corr. Center and was made personally aware of ("Phoenix's") 8th amendment rights violations and ADA rights violation through

letters, institutional requests, administrative meetings, the grievence system and institutional investigations. Oates ignored ("Phoenix's") pleas for help and provided no corrections to the violations of ("Phoenix's") rights.

 G. Mr. Terry, is the Asst. Warden of the ST. Brides Corr. Center and was made personally aware of the 8th amendment violations and ADA violations to ("Phoenix") through requests forms, Administrative meetings, institutional investigations and grievences system responces as well as letters. Mr. Terry ignored the violations to ('Phoenix's') rights and offered no corrections to the violations of his rights.

 H. Mrs. Shaw, is the Americans with Disability Cordinator at the Deerfield Corr. Center and was made personally aware of the violations to ("Phoenix's") 8th amendment rights and Americans with Disabilities rights through request forms, reasonable accomodations forns, administrative meetings and letters requesting help. Mrs. Shaw ignored and denied any help and provided no corrections to the rights violation of ("Phoenix").

 I. Mrs. Abrams Godfrey, is the St. Brides ("ADA") cordinator and was made personally aware of the 8th amendment violations and Americans with Disabilities rights violations through staff investigations, request forms, admin meetings, complaints and grievences, reasonable accomodation forms and letters in which she ignored the pleas for help and provided no corrections to the violations of ("Phoenix s") rights. Mrs. Abrams Godfrey was also aware of these violations through her position as the St. Brides Operations Manager.

 J. Mrs. J. Harris was the Deerfield Corr. Center Operations Manager and was personally aware of the 8th amendment rights and ADA violations through Complaints, Grievences, request forms, Administrative meetings, personal meetings and letters Mrs. Harris ignored the violations to ("Phoenix's") rights and provided no corrections to the violations of his rights.

 K. Dr. Alvin Harris was one of several medical providers at the Deerfield Correctional center who was personally aware of ("Phoenix's") hearing loss and need for testing and treatments through several provider appointments writen complaintis and

grievences. Several administrative meetings, letters, staff investigations. Despite direct knowlage of the 8th amendment rights and ADA violations, Dr. Harris interfeared with perscribed medical care and treatment, delayed care medical treatment and did not provide the perscribed medical treatment or Aids needed and offered no correction to the violation of ("Phoenix's") rights.

K.   Dr. K. Sharma was one of several medical providers at the Deerfield Corr. Center who was personally aware of Mr. Phoenix's hearing loss and tinnitus and need for hearing aids and the violations to his 8th amendment right and ADA rights violations through several medical appointments, adminstrative meetings, staff investigations, complaints and grievences and letters. Dr. Sharma offered no proper medical services and no corrections to the 8th amendment rights or ADA rights violations of ("Phoenix")

L.   F_NP Marnos was one of several Nurse practitioners at the Deerfield Corr. Center who was personally aware of ("Phoenix's") hearing loss and need for Hearing Aids through medical appointments, writen complaints, grievences, staff investigations, and Admin Meetings. NP Maranos offered no proper medical care or correction to the 8th amendment or ADA violations of ( Phoenix").

M.   F-NP Fairington is the Nurse Practitioner at the St. Brides Corr. Center and was personally aware of ("Phoenix's") hearing loss and tinnitus through several medical appointments, administrative meetings, writen complaints, grievences, staff investigations. NP Fairington new of the 8th amendment and ADA violations to ("Phoenix's") rights but delayed and provided no corrections to the violations for many months.

N.   RN. J. Schnur was the Health Authority and Nurse at the Deerfield Corr. Center and was personally aware of the 8th amendment and ADA rights violations due to ("Phoenix's") hearing loss and tinnitus he was not recieving proper testing or coare for through medical appointments, meetings, adminmeetings, writen complaints, grievences, letters and walk throughs. RN. Schnur ignored the violations of rights and provided no corrections to the violations of ("Phoenix's") rights.

O.   RN. Ridley was the Health Authority and Nurse at the St. Brides Corr. Center and was personally aware of the 8th amendments rights

amendment and ADA violations to Phoenix's rights through several medical appointments, staff investigations, meetings, writen complaints and grievences. RN. Ridley made no corrections to the violations of ("Phoenix's") rights.

ALL Staff; Harold Clarke, Dr. Mark Amonette, Steve Herrick, Darrell Miller, Dana Watson, Jerry Oates, Mr. Terry, Mrs. Shaw, Mrs. Abrams Godfrey, Mrs. J. Harris, Dr. Alvin Harris, Dr. K. Sharma F-NP Maranos, F-NP Fairington, Rn. Schnur, Rn. Ridley are all educated and reasonable individuals who were in positions of authority in which they had a duty under the law to correct the violations to ("Phoenix's") 8th amendment and ADA rights violations for his known heaRING LOSS AND TINNITUS but did not and furthered the violations of his rights wich caused physical, mental and emotional injuries, harm and suffering that could have been mitigated but they chose to do nothing. All were personally aware and would have known what they did was wrong and causing ("Phoenix's") harm and suffering.

## II. STAEMENT OF FACTS

2. Daniel W. Phoenix is under the custody and supervision of the ("VADOC") and at all times relivent to this suit was housed at the Deerfield Correctional Center ("DFCC"). ("Phoenix") has since transfered but remains under the custody and control of the ("VADOC")

3. At all times relivent to this suit all of the named ("VADOC") defendants and the "Contractor" defendants were responcible for ("Phoenix's") care and wellbeing as he can not provide for himself and without ("VADOC") writing orders or providing necessary medical eqipment, ("Phoenix") will not be permitted to have the necessary medical devices such as hearing aids or specialized medical care.

4. At all times relivent to this suit all of the staff from the St, Brides Corr. Center ("STBCC") was also reslloncible for his custody and wellbeing while he was an inmate their.

5. ("Phoenix") was housed at the ("DFCC") from August 9 2019 until January 9th 2024 where he transfered to the ("STBCC") and was there untill his transfer on the 17 October 2024 when he transfered to the State Farm Correctional Center (STFCC") were he currently resides.

4.

    6. Upon my arrival to the ("DFCC") I told medical staff of the ringing in my ears and hearing loss but the staff did not record this medical issue that was previously noted in my medical file. The first medical notation of this medical issue appears on December 24, 2019 during a medical admin meeting with the Health Authority Mrs. Doyel.

    7. Despite this known complaint of tinnitus and hearing loss Deerfield medical staff provided no testing for this serious medical condition untill November 2, 2021. At this time ("Phoenix") was ordered to have a hearing test which was conducted on bovember 5, 2021 by a licenced Audiologist at VCU. At this time it was determined the ("Phoenix") has significant hearing loss in his left ear and impaired hearing in his right ear with tinnitus. The specialist perscribed two hearing aids. On November 17, 2021 Dr. Harris wrote an order challenging the VCU hearing testyto be done at the oncite care center by an CNA Nurse who was not an audiologist. On January 24, 2022 ("Phoenix") was called to the care center to have a hearing test which was provided with the use of a IPAD and head phones and no proper testing equipmant. Along with this test it was determined that ("Phoenix") had hearing loss in his left ear and impaited in his right ear. ("Phoenix") discussed this Dr. Sharma yet Dr. Sharma or Dr. Harris or RN. Schnur never provided this information to the new reporter as well as never provided this information of the tinnitus to the new repoerter for the new test performed at the care center. On November 7, 2022, as ("Phoenix's") hearing loss and tinnitus worsened, He was again taken to VCU Audiology to have another test which determined again he had hearing loss in both ears and was in need for 2 hearing aids. On 10/19/2023 ("phoenix") was finally taken to VCU to be fitted for the hearing aids that were perscribed. Upon return to the Facility the approval forms were put in ("Phoenix's") medical file by the VITALCORE employees and the did nothing due to the take over by VADOC medical staff. RN. SCHNur knew of this but did nothing and ("Phoenix") was provided no hearing aids at this facility and was transfered to the ("STBCC") were Dr. Huoston Approved the order for the hearing AIDS on January 23, 2024. Despite several meetings with RN. Ridely and F-NP Farrington the Hearing Aids were not Provided untill 8/22/24.

8. It is important to note that Dr. Harris, RN. Schnur and DR. K Sharma Sent ("Phoenix") to the VCU ENT Audiologist and because they did not like the results of the proper testing, they chose to interfear with the known test results and only provided one left hearing aid which never worked properly and caused furhter hearing impairments that couls have been avoided.

9. ("Phoenix") met with other medical staff such as F-NP Maranos and explained the issues of improper hearing aids, the re-testing and the new perscription for two hearing aids yet he also failed to correct the issues and allowed ("Phoenix") to go with no proper hearing AIDS.

10. Despite ("Phoenix") teeling medical staff of these issues and his hearing loss with tinituss being diagnosed and the need for hearing AIDS, ("Phoenix") also went to medical appointments on 2/14/22, 3/2/22, 11/8/22, 2/2/22, 1/24/22, 1/23/22, 12/19/19, 12/24/19, 8/15/19, 4/22/21, 3/25/21, 10/22/20, 8/11/20, 6/18/20, 5/8/20, 3/30/20, 3/11/20, 2/24/20, 11/2/22, 10/18/22, 11/3/21, 9/2/21, 8/23/21, 10/18/22, 8/18/22, 5/24/22, 8/17/23, 8/9/23, 8/8/23, 4/27/22, 4/12/22, 11/15/21, 11/2/21, 4/26/24, 2/1/23, 4/12/23, 10/18/22, 2/24/24, 2/13/24, 1/30/24, 1/18/24, 10/23/23, 10/19/23, 9/27/23, 6/2/23, 4/21/23, 4/12/23, 3/16/23, 2/16/23, 1/25/23, 1/5/23, 10/23/23, 8/22/24, 8/22/24. All dates coinside with the medical staffs entries in ("Phoenix's") ("VADOC") medical records.

11. Dr. Harris, RN. Schnur, Dr. K. Sharma, RN. Ridely and F-NP Farrington well all in attendance at diffrent Administrative Meetings held by Mr. Oates, Mrs. Harris and Mr. Terry in which the lack of hearing aids for the known hearing loss was discussed and medical records were shown but no corrections made.

12. RN. Ridley was present during a video recorded interview were facility investigator was present with Dr. Huoston and the hearing loss was discussed on 2/13/24 as varified by Dr. Huoston's note in medical records.

13. ("Phoenix") can not chose what practitioner he sees or what specialists he sees. He is at the mercy of the Provideres to enter the proper perscriptions and follow the orders of the specialists he is sent to by the facility medical staff. And practioner of the provideres at the facility are licenced

and practicing audiologists. The facilities also do not have the proper testing equipment or sound rooms to perform the necessary testing.

15. While at the DEerfield Corr. Center, ("Phoenix") met with the ADA cordinator Mrs. Shaw about the issues surroundind his hearing aids and hearing loss. Mrs. Shaw was shown medical records and the Audiologist reports butshe did not help ("Phoenix") obtain the Hearing aids under her authority as the ADA cordinator. Shaw was also made aware of this violation to ("Phoenix's") ADA rights through the Grievence system but ignored the requests for help with the violations to his rights. Shaw also denied the reasonble ADA accomodation form ("Phoenix") sent her with accompanying paperwork for her to provide the hearing Aids under her authority as the ADA cordinator. Shaw provided no help or corrections to ("Phoenix's"") ADA rights buy providing no hearing aids once she was made aware.

16. Wile at the ("STBCC"), ("Phoenix") met with Mrs. Abrams Godfrey who was the ADA cordinator there about this ADA issue and the Violations to his rights as a disabled American with hearing loss. Mrs. Godfrey was shown medical records and presented with the proper ADA acomodation forms and refused to correct the violations to his rights. Mrs. Godfrey also learned of this violation through the grievence system and still declined to correct the violations to ("Phoenix's") rights under her authority as the ADA cordinator.

17. Mr. Miller met with ("Phoenix") during rounds and during an adminstrative meeting in which he was shown medical records and the refusals to provide the hearing aifds for his know hearing loss and did not provide the hearing aids under his authority as the warden of ("DFCC") or under VADOC ADA policies. Mr. Miller also recieved several letters and request forms asking for help and the corrections of his 8th amendment and ADA rights violations wich went ignored and no help provided.

18. Mr. Oates was present at several administrative meeting on several dates with medical staff which the violations of his 8th amerndment and ada rights were discussed at length and that despite the interfearence of medical stqaff two diffrent audiology reports from specialists at VCU ordered ("Phoenix") to have hearing

7.

aids and no hearing aids were provided, for both ears. Mr. Oates also was aware of this issue and rights violations through his investigations and responces to the grievences regaurding this hearing loss issue and provided no corrections. Mr. Oates also responded to several requests forms and offered no help or corrections under his authority as Asst. Warden of the ("DFCC") facility or under his authoirty of VADOC ADA Policies.

19. Mrs. J. Harris was the ("DFCC") operations manager and had several meetings with ("Phoenix") and held several admin. meetings in which medical staff and medical records were present and the hearing loss and no hearing aids was discussed. She was aware that the 8th and ADA rights were being violted through these meetings and through the use of the grievence system which she resonded to ("Phoenix") offering no help or corrections under her authority as operations manager oe under VADOC ADA policies. She just ignored all of the requests and letters and provided no help to Phoenix.

20. Mrs. Abrams-Godfrey was also the Operations manager at the St. Brides Corr. Cneter and provided no corrections to the violations of ("Phoenix's") 8th amendment rights or ADA rights as described in number 16.


21. Asst. Warden Terry was the Asst. Warden of the ("STBCC") facility and met with ("Phoenix") on several occations and help a admin. meeting in which his hearing loss and lack of hearing aids was discussed but provided no correction to the violation of his 8th amendment rights or ADA rightsd under his authority as the Ast. Warden of ("STBCC"). Mr. Terry also responded to ("Phoenix's") grievences and despite his investigations and the overwhelming evidence offered no help or corrections to the ADA or medical issues as he had the authroity.

22. Warden Watson was also aware of these violations to ("Phoenix's") medical condition of hearing loss and ADA issues through the use of certified letters yet she offered no coorections depite being informed and her authority to provide the necessary correction. Watson was also aware of the violations to his rights as there were sebveral conversations about this during her walk thoughs.

8.

23. There were several adminstrative meetings in which medical staff and facility staff were present such as on 8/12/20, 12/19/20, 10/1/22 10/18/22, 10/17/22, 9/12/23 2/13/24 and as well as other dates. All staff named as defendants tht are facility staff were all made aware of the violations to ("Phoenix's") 8th amendment and ADA rights due to his known hearing loss and tinnitus which the specialist ordered two hearing aids. No one made any corrections.

24. There were several video recorded facility staff investigator investigations at both Deerfield and at St. Brides in which the hearing issue and lack of hearing aidfs and interfearence by staff was discussed but no corrections were made. It can also be seen in these meetings that the investigators made wardens asst. wardens and medical or operations aware of the complaints and the complaints were investigated. These reports will be requested during discovery but one report number is DFCC09062023 done by Lt. Patterson. The VADOC SIU alos came to meet with ("Phoenix") on several occations and the violations to his rights and ada rights were discussed but no corrections were made. These interviews were also recorded and it was stated the issues will be investigated and staff will be made aware. Despite these investigations and staff being made aware of the investigations, no help was ever given at deerfield and help at St. Brides was untimely at best. Seinior staff atr VADOC headquarters would have also been aware of the investigations from SIU.

25. On 7/26/24, ("Phoenix") recieved the II two rejection of Grievence number STBCC-24-reg-63 Stateing there is no violation of policies and procedures regaurdin my hearing issues and the issue has been investigated. This is after the Level I grievence was throughly investigated by Warden Watson was unfounded on 7/3/24, and after the writen complaint was also dismissed despite these dismissals there was no hearing Aids provided and the violation to my 8th amendment rights and ADA rights continued.

26. On 7/ Feb. 24 ("Phoenix") filed writen complaint STBCC-24-Wri-323 for the abuse and lack of medical care by ("DFCC") and ("STBCC") facility and the Need for an SIU investigation which was responded to by Godfrey that the Warden, Watson, sent a reqQest to SIU.

9.

27. On 5/22/24 ("Phoenix") filed the ADA reasonable accomodation form requesting the hearing Aids that medical files indicate were perscribed by the VCU specialist which Godfrey denied despite stating they were tring to contact VCU regarding the hearing AIDs. ("Phoenix") filed the writen complaint STBCC-24-wri-1039 for the deniel of the hearing aids in which AW Terry reponded stating a quote was provided for the order of the hearing aids in October of 2023 and despite numourous attempts to contact VCU for an appointment no appointment was made with this provideder or any provided. ("Phoenix") then filed the grievence which was arbitraly dismissed as repetitive and then he filed the level two appeal which both were dismissed and still no hearing aids.

28. On 21 June 24, I sent a facility request to Mrs. Godfrey requesting to speak to Mr. Marrano regarding the lack of ADA and medical help for the hearing aids to which she stated write a letter. A letter was writen and sent bulk mail regarding the lack of ADA and medical help using the bulk mail system on 9/24/24 and responce was provided.

29. On 20 Dec 2023 I wrote facility request form to RN Schnur requesting information on my follow up appointment to recieve the hearing aids after a two month wait from the fitting. RN powell respondend on 26 Dec. 23 that the facility was waiting for VCU to schedule an appointment yet the authorization for the purchases has never been done.

30. On 10/15/2020, ("Phoenix") wrote writen complaint DCC-20-inf-4872 for requesting to see Dr. Amonette for the lack of medical care and not being aloowed to see him regarding the lack of medical care and RN. Schnur responded that I had been seen by the facility providers.

31. On 10/26/20, ("Phoenix") wrote writen complaint DCC-20-inf-4939 for asking to see the Regional medical director for the hindering and impeded medical services and no appointment being provided to which Schnur responded my needs have been addressed but still no ENT help for my hearing.

32. On 3/12/21 ("Phoenix") wrote DCC-21-Reg_41 for being denied access to the ENT specialist for hearing issues to which the lvel two appeal was also unfounded.

33. On 6/16/21 ("Phoenix") wrote complaint DCC-21-inf-1555 for asking to see ENT since 2019 and no appointment has been made to which RN. Schnur reponds that Medical is awaiting an appointment to be schedules.

34. On 8/2/21 ("Phoenix") wrote complaint DCC-21-inf-2028 for not having an ENT appointment scheduled despite being told that an appointment was made and RN. Schnur responds that an appointment was made on 10/23/20. Still no appointment.

35. On 9/27/21 ("Phoenix") filed writen complaint DCC-21-inf-2474 for not having the appointment for ENT which Schnur responds that an appointment has been made but he still has not been seen. Then I filed the regular grievence which was denied by Oafés despite an investigation and on Appeal the regional director also investigated yet dismised the grievence as unfounded. No help provided.

36. On 1/18/22 I wrote complaint DCC-22-inf-183 for having had the audiogram 4 months prior and still no hearing aids which Schnur responds that a nother test was provided on 2/22/22 and the results are pending. On 2/23/22 I filed the regual grievence which was denied as unfounded yet Oates states that the hearing test will be conducted onsite for the fitting in which this was never done and I was only provided a subpar hearing test and given no hearing aids despite the investigation. The appeal was also denied.

37. On 6/28/22 ("Phoenix") filed the DCC-reg-22-282 for the breech of contract on VITALCORE for not providing the necessary medical services with hearing bieng one of the issues and then the Level two also found this unfounded despite over whelmin evidence in the medical files of ("Phoenix") and no help or admin remidies provided.

38. On 5/15/2023 I wrote complaint DCC-23_inf-1089 for 7 months passing with no ENT appointment to it was stated an appointment was made. Both the grievence and the appell were dismissed and still no hearing aids.

39. On 5/22/2023 ("Phoenix") wrote informal complaint DCC-23-inf-1158 for Warden Millers deliberate indiference and not making corrections to the violations of his rights and lack of medical care. ("Phoenix") wirtes the grevence and appeal yet

still offered no help or corrections despite the greivence and an adminstrative meeting with Miller.

40. On 7/24/23 I wrote DCC-23-inf-1625 for 7 months passing and no hearing aids ordered despite orderes from VCU for the hearing aids.

41. It is repeated noted on all greivences and appeal grievences that all of my serious medical needs have been investigated and no help was ever offered. Even the SIU and institutional investigators claimed my complaints were unfounded despite over whelming medical records showing there are violations and lack of medical care.

42. It has been held that while Administrative VADOC employees are not medical pŗroviders they can still be held accountable for 8th amendment rights violations when the were notified via the grievence procedure or in writing by inmates and offer no corrections to the rights violations in the 4 Circuit.

43. On 11/18/21, The office of Harold Clarke recieved a certified signature required letter in which ("Phoenix") discusses his lack of medical care and requests help. Clarke never responded or offered help. Hearing was discussed.

44. On 9 March 22 ("Phoenix") wrote a letter and sent it to Mr. Oates, Mr. Clarke, Mr. Robinson, Mr. Amonette, Schnur, regaurding the lack of medical care and violations of his rights and despite this letter being recieved there was no help offered and no corrections to the violations of my rights.

45. On Dec. 29, 2021 ("Phoenix") wrote to Director Clarke asking for help and corrections to his lack of medical care and violations to his rights through certified mail No. 702103500001 25209931. No responce.

46. ('Phoenix") also wrote certified siganture required letter to Clarke, 7021 03500001250209931 requesting help and no responce.

47. On 21 February 2024 I sent Warden Watson a letter asking for her help with the abuse I suffered by VADOC staff and to correct the violations to my *th amendment rights. I ask to speak with SIU for a proper investigation. I also ask for my ADA rights violations to be corrected. As a result of this letter Warden Watson took no action to correct the violations to my

12.

rights and stop the abuse. She just ignored my pleas for help.

48. On 12/29/21 and 11/9/21, certified letters were sent to Harold W. Clarke asking for help and the corrections of my medical care in which my hearing issues were discussed. No responce was offered and no corrections to my rights provided.

49. On 3I June 2022, I sent Warden Miller a letter regarding the abuse by his staff, lack of medical care, and the violations to my 8th amendment rights and ADA rights for my hearing issues. Mr. Miller had a personal meeting with me in the Admin Office and he took notes baced on the medical records he was shown. Desoite this meeting no corrections were made to my care or to my rights.

50. On 16 Nov. 2022, I wrote a letter to the Health Services Quality Improvement Unit in responce to a letter writen in responce to inquireis from my family which they stated my issues were addressed yet all of my medical issues were not addressed and in my responce I further explained the retailation and lack of medical care by admin staff and medical staff for several issues to include my ear and nose issues. No help or corrections were provided.

51. On 27 Sept 2022 I wrote a letter to Warden Miller, Asst. Warden Oates, Operations Harris, Schnur, Dr. Harris, Harold Clarke and Mark Amonette addressing the depravitation to my medical care and breech of contract. In this letter I discuss the lack of medical care for hearing loss and lack of hearing aids, as well as several other medical issues I was not recieving proper medical care for. Despite this letter and as medical records show, I did not recieve corrections to my care or rights. This letter was notorized and sent certified to all parties.

52. On Nov. 3, 2022 I wrote Operations Harris a letter about the depravitations to my medical care, retailation by staff and not help from the Administration. In this letter I detail the medical issues including my hearing loss and lack of hearing aids. No responce or corrections is offered from the Operations manager and my issues were ignored. As a result of no help. This letter was also sent to Miller, Oates, Schnur, Clarke, Amonette and others

53. On 24 February 2023, I sent a letter to Miller, Clarke, Mase Hadriesafthoionand others for the continued lack of medical

13.

medical care and retailation from medical staff and administration staff despite several admin meetings. In this letter I discuss the lack of medical care and lack of hearing aids for my hearing loss and tinnitus. No corrections to my rights or medical care was made.

<u>54.</u> On 23 March 2023 I wrote a certified letter to Mark Amonette for the lack of medical care I was recieving by facility medical staff and asked him for corrections to my care. In this letter i discuss the hearing loss and not being provided hearing aids according to two hearing tests. I also talk about the interfearence with my care by medical staff. No help or corrective measures were taken by Amonette.

<u>55.</u> Even though administrative staff are not medicaly trained, they were shown medical records to which they could understand that these violations were not just taking place over a couple of weeks or months but have gone on for over 4 years and had a duty to act under their authority and law once they were notified.

<u>56.</u> Under the VADOC grievence procedure and Medical records policies of the VADOC, Unit Heads and desiganted persons are granted access to an inmates medical records for corrections of complaints or grievences.

III. CLAIMS FOR RELIEF

CLAIM 1., VIOLATIONS TO 8th AMENDMENT RIGHTS

<u>57.</u> Daniel W. Phoenix alleges that his 8th amendment rights were violated by the named defendants; Harold Clarke, Mark Amonette, Steve Herrick, Darrell Miller, Jerry Oates, Dana Watson, Mr. Terry, Mrs. Shaw, Mrs. Abrams Godfrey, Mrs. Harris, Dr. Harris, Dr. K. Sharma, F-NP. Maranos, F-NP. Farrington, RN. Schnur, and RN. Ridely for their actions that on not making corrections to the violations to his 8th amendment rights for not providing medical care or medical aids for his serious medical condition of hearing loss and tinitus that was diagnosed and confirmed which led to the physical, mental and emotional injuries and harm. These Defendants show thier diliberate indifference to ("Phoenix's") lack of medical care through the following;

<u>A.</u> Harold Clarke shows his deliberate indifference to my serious medical condition as he was directly notified through

certified letters containing medical and grievance records and chose to ignore the lack of medical care and risks of further injury and harm when he offered no help or corrections to the lack of medical care in violation of ("Phoenix's") 8th amendment rights. I incorporate Paragraphs; 1,2,7,13, 43-46, 48, 51,52,53, 56

B.  Mark Amonette was deliberatly indifferent to my serious medical condition of hearing loss and lack of hearing aids as he was directly notified through certified letters, ignorded the risks of further injury and harm offering no corrections to my rights violations depite haveing direct knowlage of the lack of medical care. I incorporate Paragraphs; 1,2,7,13 43-46, 48,51,52, 53,56; 54, 30

C.  Steve Herrick was deliberately indifferent to my serious medical condition of hearing loss and lack of medical aids as he was directly made aware of the lack of medical care through letters and the grievence system, ignored the risks of further injuries and harm, and offered no corrections to my medical care in violation of my 8th amendment. I incorporate Paragraphs; 1,2,7,13,43-46 10, 32

D.  Darrell Miller was deliberately indifferent to my serious medical condition of hearing loss and lack of medical care care as he was made directly made aware of the lack of medical care through letters, admin meetings, request forms and the grievence syatem, ignored the risks of furhter injury and harm and offered no corrections to my meadical care in violation of my 8th amendment rights. I incorporate 2,3,5,7,8,10,13,17,23,24,39,49 51-53

E.  Dana Watson was deliberately indifferent to my serious medical condition of hearing loss and lack of hearing aids as she was made directly aware of the lack of medical care through letters, grievences, requestforms and staff investigations, ignored the risks of further injuries and harm and offered no corrections to my medical care in violation of my 8th amendment rights.
I incorporate paragraphs, 4,7,10,12,13,16,22,24,25,27,47,

F.  Jerry Oates was deliberately indifferent to my serious medical condition of hearing loss and lack of hearing aids as he was made directly aware of this issue through letters, request forms, the grievence system, admin meetings and personal meetings, ignored the risks of further injury and harm and offered no correction to my medical care in violation of my 8th amendment rights.
I incorporate paragraphs 2,3,5,7,11,13, 18, 23, 32, 33-39, 40-41, 44, 51-52, 53

15

G. Mr. Terry was deliberatly indifferent to my serious medical condition of hearing loss and lack of hearing aids as he was made directly aware of the lack of medical care through the grievence system, letters, request forms, institutional investigations, admin meetings, ignored the risks of further injuries and harm and offered no corrections to my medical care in violation of me 8th amendment rights. I incorporate paragraphs 2,3,4,7,12,13,21,24,25,26,27

H. Mrs. Shaw was deliberately indifferent to my serious medical caondition of hearing loss and lack of hearing aids as she was made directly aware of the lack of medical care through admin meetings, request forms and meetings, ignored the risks of further injuries and harm and offered no corrections to my medical care in violation of my 8th amendment rights. I incorporate paragraphs 2-5,7,10,15,23

I. Mrs. Abrams Godfrey was deliberately indifferent to my serious medical needs through the direct notifacation by the grievence system, meetings, and admin meetings, ignored the risks of further injuries and harm and offered no corrections to the violation to my 8th amendment rights. I incorporate 3,4,7,10,12,13,16,20,23,24,27,28

J. Mrs. Harris was deliberately indifferent to my serious medical caondition of hearing loss and lack of hearing aids as she was made directly aware of the lack of medical care through grioevences, admin meetings, letters, personal meetings and request forms, ignored the risk of injuries and harm and offered no correction to my medicasl care in violation of my 8th amendment rishts. I incorporate paragraphs 2,3,5,7,10,13,15,18,19,23,24,37,38,39,40,49,51,52,

K. DR. ALVIN Harris was deliberately indifferent to my serious medical condition of hearing loss through the lack of medical care, untimely medical care, interfearence with treatment once perscribed by a specialist and not providing the proper hearing aids as he was personaly aware of this issue as a medical provider of ("Phoenix") at ("DFCC") for several years, ignored the risks of further injury and harm and provided no corrections to my medical care in violation of my 8th amendment rights. I incorporate paragraphs 2,3,5,6,7-11,13,23,24,37,40,51

L. Dr. K. Sharma was deliberately indifferent to my serious medical condition of hearing loss and lack of hearing aids as he was a medical provider who provided untimely medical care, no hearing aids and interfeared with medical specialist orders once provided and ignored the risks of further injury or harm by offering no corrections to my medical care in violation of my

16

8th amendment rights. incorporate paragraphs 2,3,5,6-11,13,23 24,37,40,51

L.   F-NP. Maranos was deliberatly indifferent to my serious medical condition of hearing loss and lack of hearing aids as he was a medical provider who provided direct medical care to ("Phoenix") at ("DFCC") and ingnored the risks of further injury and harm by offering no corrections to his medical services in direct violation of his 8th amendment rights. incorporate para.; 2,3,5,7,8,9,10,11

M.   F-NP. Farrington was deliberatly indifferent to my serious medical condition of hearing loss and lack of hearing aids as she was a medical provider w ho offered direct medical care to ("Phoenix") at ("STBCC"), ignored the risks of further injury and harm and offered no corrections to my medical care in direct violation of my 8th amendment rights. I incorporate para; 4,7,10,12,13 23,24

N.   Rn. Schnur was deliberatly indiferent to my serious medical condition of hearing loss and lack of hearing aids as she was the Health authority at ("DFCC") and responded to my complaints through the grievence system, was part of several admin meetings, recieved several letters and met with me personaly so she was aware of the untimely medicasl care, lack of medical hearing aids and interfearence with medical orders that were perscribed by a Specialist, ignored the risks of further injury and harm in direct violation of my 8th amendment rights. incorporate 2,3,5-7,11,13,23-24,29 30-39,40,44,51,53

O.   RN. Ridley was deliberatly indifferent to my serious medical condition of hearing loss and lack of hearing aids as she was the health authority at ("STBCC") and responded to greivences, was part of an investigation by the institutional investigator and met with ("Phoenix") od several occasions and directly aware of the lack of medical care, ignored the risks of further injuries and harm and offered no corrections to the lack of medical services in direct violation of my 8th amendment rights. incorporate, 3,4,7,10,12,13 16,23,24,25,

58.   As a direct reflection of the actions of all staff listed in A-O, i suffered further hearing loss  and further increased tinnitus causing head aches as well as this effecting daily activiyties as I could not properly hear what was going on around me and missed important information. This effected me physically, mentaly and emotionaly through their wanton and deliberate infliction of suffering through thier actions.

17.

59. As a direct relfection of the actions of the defendants mentioned in A-O, I believe I am owed compensation for my physical mental and emotional injuries and harm caused by their actions as a matter of clear law for the violations of my 8th amendment rights.

CLAIM 2.  VIOLATIONS TO MY ADA RIGHTS UNDER 42 U.S.C. §12101 et. seq.

59. Daniel W. Phoenix alleges that his ADA rights were violated due to staff not providing the necessary and perscribed hearing Aids for his hearing loss and the defendants: Clarke, Amonette, Herrick, Miller, Watson, Oates, Terry, Shaw, Mrs. Harris, Mrs. Abrams-godfrey, Dr. Harris, Dr. Sharma, F-NP. Farrington, F-NP. Maranos, RN Schnur and RN. Ridely were all made personally aware of this serious medical condition that was diagnosed two different times and that the hearing aids were still not being provided to which each staff member had a duty under the law and the ADA rights of ("Phoenix") to provide the necessary and perscribed hearing aids to assit him with his hearing loss but did not do so or did not due so in a timely mannor as all medical records indicate. ("Phoenix") incorporates paragraphs        .

60. As a direct reflections of the defendants actions, ("Phoenix") is entitled to compensation for the suffering he endured both physically and mentally from his ADA rights being violated and the need less suffering. He believes he is also entitled to punitive damages for the willfull and direct violation of his ADA rights and failure to make the necessary corrections for over 4 years as a result of the defendants actions.¹ incorporate 2-56

IV. PRAYERFUL RELIEF

61. I pray this Honorable Court moves this Civil action forward to the next phase of this action so I can recieve the relief if deserve and have fervently prayed for steming from the defendants violations of my 8th and ADA rights which can be confirmed by my medical records and supporting documents.

CONCLUSION

I hope and Pray this Amended Complaints meets the Court's Order and moves this action forward. Should any other information be needed, I will present the information in a timely amnnor at the Court's request.

Respectfully Submitted

*[signature]*

Daniel W. Phoenix, 1190078
17 January 2025.

Certifacate of Service

    I Daniel W. Phoenix declair under the pealty of perjury that this Court Ordered Amended Complaint was sent to this Honorable Court on the ___ Day or January 2025 and requests this Court's Clerk to file this accordingly. The Plaintiff also requests that this Clerk send a copy to the Defendants through the Electronic service. This was sent through the use of the 1st Class U.S. Mail service.

Respectfully,
Daniel W. Phoenix
1190078
17 January 2025