IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DANIEL W. PHOENIX,

        **Plaintiff,**

    **v.**                                  **Civil Action No. 3:23cv316**

HAROLD W. CLARKE, *et al.*,

        **Defendants.**

## MEMORANDUM OPINION

Daniel W. Phoenix,[1] a former Virginia inmate and frequent litigant, filed this 42 U.S.C. § 1983 action.[2] In his Amended Complaint ("Complaint," ECF No. 38), Phoenix argues that he while he was an inmate in the Deerfield Correctional Center and in the St. Bride's Correctional Center, he was denied adequate medical care for his hearing loss and tinnitus because his receipt of hearing aids was delayed. The matter is before the Court on the Motion to Dismiss filed by the Virginia Department of Corrections ("VDOC") Defendants ("Defendants")[3] (ECF No. 48),

---

[1] Phoenix changed his name from Daniel W. Jamison to Daniel W. Phoenix during the pendency of this litigation.

[2] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[3] The VDOC Defendants who move to dismiss the action are Harold W. Clarke, the former Director of the VDOC; Dr. Mark Amonette, Chief Medical Director of the VDOC; Steve Herrick, the Director of Health Services of the VDOC; Darrell Miller, Warden of Deerfield Correctional Center; Dara Watson, Warden of St. Brides Correctional Center; Jerry D. Oates, the former Assistant Warden at Deerfield Correctional Center; Mr. Terry, the Assistant Warden of

and the Court's screening obligations pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. Phoenix was provided with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), by the Court. (ECF No. 50.) Phoenix filed a response. (ECF No. 62.) For the reasons articulated below, the Motion to Dismiss will be GRANTED.

### I.  Standard of Review

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

---

St. Brides Correctional Center; Mrs. Shaw, the Americans with Disabilities Act ("ADA") Coordinator at Deerfield Correctional Center; Mrs. Abrams-Godfrey, the St. Brides American with Disabilities Act Coordinator; J. Harris, the Deerfield Correctional Center Operations Manager; and S. Ridely, an RN. (ECF No. 38, at 2–5; *see* ECF No. 49, at 1 (providing correct spelling).) Phoenix also named several medical providers, Dr. Alvin Harris, Dr. K. Sharma, Steven Marinos, FNP, RN J. Schnur, who have separately filed a Motion for Summary Judgment that is not addressed in this opinion. (ECF No. 38, at 1.) Phoenix did not name Tiffany Powell, RN, in his Amended Complaint. Accordingly, the Clerk shall TERMINATE Defendant Powell as a party in this action.

plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980

F.2d at 952. This principle applies only to factual allegations, however, and "a court considering

a motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662,

679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41,

47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations

omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the

speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570,

rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In

order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must

"allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de

Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d

193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly,

while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th

Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and

constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See*

*Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.  Allegations in the Amended Complaint

Phoenix's Complaint is repetitive and names as a defendant any person who may have heard or potentially read his complaints about his desire for hearing aids amongst his many other ailments.[4]  The Complaint is short on useful facts and details.  Instead, it mostly consists of a list of dates that Phoenix met with various Defendants, and a list of letters and grievances that he submitted, and his terse conclusions that he was ignored or no one offered him "corrections."

---

[4] The Court cannot review this case in a vacuum. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (explaining that a Court may review other court records); *Clay v. Yates*, 809 F. Supp. 417, 427–28 (E.D. Va. 1992) ("it is appropriate to consider what the court's records show about the number and kinds of cases instituted by the *pro se* litigant, and the extent to which the conduct of that litigant constitutes an abuse of the judicial process" (citations omitted)).  The Court notes that, in addition to his complaints about hearing loss and tinnitus, simultaneously, Phoenix complained incessantly to many of the same Defendants about his neck, back, arm, elbow, and shoulder injuries, an ankle injury after a fall off a van, celiac disease, other food sensitivities, pulmonary and breathing issues. *See, e.g., Phoenix v. Vital Core Health Strategies*, No. 23cv357, 2025 WL 2313208, at *3 (E.D. Va. Aug. 11, 2025) (explaining that between 2019 and 2024, Phoenix complained about "celiac disease, a torn bicep tendon, neck and back injuries, hearing issues, breathing issues, dental problems and other ailments" and "was seen scores of times for these medical issues."); *Phoenix v. Herrick*, No. 3:23cv335 (E.D. Va. filed May 18, 2023) (suing over fall from transport van and treatment for ankle injury).  In one lawsuit alone filed in this division, Phoenix claimed that he had "celiac disease, inguinal hernia, umbilical hernia, serious neck and back pain with nerve pain, hemorrhoids, pain management, dermatitis hepiformas, foot problems, malnutrition, tinnitus in ears, dental erosion, and mental problems," as well as peripheral neuropathy and paresthesis. *Jamison v. Northam*, No. 3:20cv339 (E.D Va. May 13, 2020), ECF No. 1, at 8, 14 (spelling and capitalization corrected).
Between August 2019 and 2024, Phoenix filed at least nineteen lawsuits in this division alone challenging various aspects of his medical care that have required the Court to expend a great deal of time and resources to resolve.  Phoenix has filed vexatious and repetitive lawsuits against numerous VDOC employees, medical providers, and even attorneys for the Commonwealth charged with defending the actions, for every alleged ailment simply because he was dissatisfied with the level and type of care he received.  While some of Phoenix's medical conditions may truly be considered serious, as discussed below, his hearing loss and tinnitus and his delay in receipt of two hearing aids does not reach that level.

## A. <u>Relevant Allegations About Medical Care</u>

With respect to his underlying medical condition—hearing loss and tinnitus—and the

medical care provided, Phoenix alleges as follows:[5]

> 5.    Phoenix was housed at the Deerfield Correctional Center from August 9, 2019, until January 9th, 2024, where he was transferred to the St. Brides Correctional Center and was there until his transfer on October 17, 2024, when he was transferred to the State Farm Correctional Center . . . .
>
> 6.    Upon my arrival to the Deerfield Correctional Center, I told medical staff of the ringing in my ears and hearing loss, but the staff did not record this medical issue that was previously noted in my medical file. . . .
>
> 7.    Despite the known complaint of tinnitus and hearing loss, Deerfield medical staff provided no testing for serious medical condition until November 2, 2021.    At this time, Phoenix was ordered to have a hearing test which was conducted on November 5, 2021, by a licensed audiologist at VCU.    At this time, it was determined [that] Phoenix has significant hearing loss in his left ear and impaired hearing in his right ear with tinnitus.    The specialist prescribed two hearing aids.
>
> On November 17, 2021, Dr. Harris wrote an order challenging the VCU hearing test to be done at the onsite care center by a CNA nurse who was not an audiologist.    On January 24, 2022, Phoenix was called to the care center to have a hearing test which was provided with the use of an IPad and headphones and no proper testing equipment.    Along with this test, it was determined that Phoenix had hearing loss in his left ear and impaired hearing in his right ear.    Phoenix discussed this [with] Dr. Sharma. . .
>
> On November 7, 2022, as Phoenix's hearing loss and tinnitus worsened, he was again taken to VCU audiology to have another test which determined again he had hearing loss in both ears and was in need for 2 hearing aids.    On October 19, 2023, Phoenix was finally taken to VCU to be fitted for the hearing aids that were prescribed. . . . Upon return to the facility, the approval forms were put in Phoenix's medical file by the VITALCORE employees and then did nothing due to the takeover by VADOC medical staff. . . . Phoenix was provided no hearing aids at this facility and was transferred to St Brides Correctional Conter where Dr. Houston approved the order the hearing aids on January 23, 2024. . . . .    Despite several meetings with RN Ridely and F-NP Farrington, the hearing aids were not provided until 8/22/24.

---

[5] The Court employs the pagination assigned by the CM/ECF docketing system.    The Court corrects the spelling, capitalization, punctuation, and paragraph structure in the parties' submissions.    The Court omits Phoenix's shorthand for names of persons and facilities or any extraneous quotation marks and parentheses.

(ECF No. 38 ¶¶ 5–7.) Phoenix states that on an unspecified date, he was "provided one left hearing aid which never worked properly that caused further hearing impairments that could have been avoided." (ECF No. 38 ¶ 8.)[6]

The next portion of Phoenix's Complaint is simply a list of meetings on unidentified dates, and of grievances, requests, and letters in no discernable order. Phoenix indicates that he had meetings with Defendants about the lack of hearing aids and his hearing loss was discussed but allegedly no one made "corrections." (ECF No. 38, at 7–10.) Phoenix lists various grievance materials, requests, and letters that he submitted or mailed to individual Defendants complaining that he had not received two hearing aids or vaguely about "the lack of medical care," and indicates that he received no response, was ignored, or that no one made "corrections." (ECF No. 38, 11–15.) Although almost entirely devoid of useful facts and details to support an Eighth Amendment claim of deliberate indifference to his serious medical needs, the Court nevertheless summarizes the allegations related to Defendants below.[7]

## B. Meetings with Defendants About Medical Care

On February 13, 2024, Defendant Ridely "was present during a video recorded interview" with a facility and investigator and Dr. Houston and "hearing loss was discussed."

_____

[6] Notably absent from his Amended Complaint are important details that were included in his original Complaint. After the hearing test conducted on site, the nurse, Mrs. Babb determined that one hearing was needed and she "only provide[s] one hearing aid." (ECF No. 1, at 6.) The one left hearing aid was ordered on May 24, 2022, and was "provided weeks later." (ECF No. 1, at 8.) Thus, from his own allegations, it is evident that Phoenix was provided with one hearing aid in June of 2022.

[7] The Court omits any paragraph that does not mention a specific Defendant or simply references "staff," or "Defendants," as these allegations do not provide details about an individual Defendant's personal involvement or liability. *Cf. Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) ("Vague references to a group of defendants, without specific allegations tying the individual defendants to the alleged unconstitutional conduct'" fail to support a claim for relief against the individual defendants. (citing *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003))).

(ECF No. 38 ¶ 12.)  Phoenix met with the ADA coordinator at Deerfield Correctional Center, Defendant Shaw "about the issues surrounding his hearing aids and hearing loss." (ECF No. 38 ¶ 15.)  Defendant Shaw was shown medical records, but she "provided no help or corrections to Phoenix's ADA rights by providing no hearing aids once she was made aware." (ECF No. 38 ¶ 15.)  Phoenix met with Defendant Abrams-Godfrey, the ADA coordinator at St. Brides Correctional Center about "the violations to his rights as a disabled American with hearing loss," and Phoenix showed her medical records, but she "refused to correct the violations of his rights." (ECF No. 38 ¶ 16.)  Defendant Miller met with Phoenix "during rounds and during an administrative meeting in which he was shown medical records and the refusals to provide the hearing aids for his know[n] hearing loss and did not provide the hearing aids under his authority as the warden of" Deerfield Correctional Center. (ECF No. 38 ¶ 17.)  Defendant "Oates was present at several administrative meetings on several dates with medical staff [where] violations of [Phoenix's] 8th Amendment and ADA rights were discussed at length," including that VCU specialists prescribed hearing aids for both ears. (ECF No. 38 ¶ 18.)  Defendant Oates "offered no help or corrections." (ECF No. 38 ¶ 18.)

Defendant Harris, the "Operations Manager . . . had several meetings with Phoenix . . . in which medical staff and medical records were present, and the hearing loss and no hearing aids were discussed.  She was aware that the 8th and ADA rights were being violated," but she "offer[ed] no help or corrections" and "ignored all of the requests and letters." (ECF No. 38 ¶ 19.)  Defendant Terry, the assistant warden of St. Brides Correctional Center "met with Phoenix on several occasions and help [sic] a admin. meeting in which his haring loss and lack of hearing was discussed but provided no corrections . . . ." (ECF No. 38 ¶ 21.)  Defendant Miller "had a personal meeting with me in the Admin Office and he took notes based on the

medical records he was shown.  Despite this meeting, no corrections were made to my care or to my rights."  (ECF No. 38 ¶ 49.)

### C. Grievance Materials

On July 3, 2024, Defendant Watson found a Level I grievance "unfounded" in which Phoenix complained about "no hearing aids provided."  (ECF No. 38 ¶ 25.)  On February 7, 2024, Phoenix submitted a written complaint "for the abuse and lack of medical care . . . and the need for an SIU[8] investigation which was responded to by [Abrams-]Godfrey that the Warden, Watson, sent a request to SIU."  (ECF No. 38 ¶ 26.)  On May 22, 2024, "Phoenix filed the ADA reasonable accommodation form requesting the hearing aids . . . prescribed by the VCU specialist which [Abrams-]Godfrey denied despite stating they were trying to contact VCU about the hearing aids."  (ECF No. 38 ¶ 27.)  Phoenix filed a written complaint "for the denial of the hearing aids in which AW Terry responded stating a quote was provided for the order of the hearing aids in October of 2023, and despite numerous attempts to contact VCU for an appointment no appointment was made with this provider . . . ."  (ECF No. 38 ¶ 27.)

On June 21, 2024, Phoenix submitted a "facility request to Mrs. [Abrams-]Godfrey requesting to speak to [RN Marinos] regarding the lack of ADA and medical help for the hearing aids to which she stated write a letter."  (ECF No. 38 ¶ 28.)  On September 27, 2021, filed a written complaint about "not having the appointment for ENT which Schnur responds that an appointment has been made" and Phoenix filed a "regular grievance which was denied by Oates despite an investigation."  (ECF No. 38 ¶ 35.)  On January 18, 2022, Phoenix submitted a written complaint "for having had the audiogram 4 months prior and still no hearing aids which Schnur responds that another test was provided on 2/22/22 and the results are pending," and "[o]n

---

[8] Phoenix does not define what "SIU" abbreviates, but it appears to be an investigative unit.

2/23/22, [Phoenix] filed a regular grievance which was denied as unfounded yet Oates states the hearing test will be conducted onsite for the fitting in which this was never done and I was only provided a subpar hearing test and never given no hearing aids . . . ." (ECF No. 38 ¶ 36.)

On May 22, 2023, "Phoenix wrote informal complaint . . . for Warden Miller's deliberate indifference and not making corrections to the violations of his rights and lack of medical care," but he "was still offered no help or corrections despite grievance and an administrative meeting with Miller." (ECF No. 38 ¶ 39.)

### D. **Letters to Administrators of VDOC**

On November 18, 2021, "the office of Harold Clarke received a certified signature required letter in which Phoenix discusses his lack of medical care and requests help. Clarke never responded or offered help. Hearing was discussed." (ECF No. 38 ¶ 43.) On March 9, 2022, Phoenix wrote a letter to Defendants Oates, Clarke, Robinson, Amonette, and Schnur "regarding the lack of medical care and violations of his rights and despite this letter being received there was no help offered and no corrections to the violations of my rights." (ECF No. 38 ¶ 44.) On December 29, 2021, and on November 9, 2021, Phoenix wrote letters to Director Clarke 'asking for help and corrections to his lack of medical care and violations to his rights through certified mail . . . . No response." (ECF Nos. 38 ¶¶ 45, 46, 48.) In these letters, Phoenix's "hearing issues were discussed." (ECF No. 38 ¶ 48.) On February 21, 2024, Phoenix "sent Warden Watson a letter asking for her help with the abuse I suffered by VADOC staff and to correct the violations to my 8th Amendment rights" and his "ADA rights." (ECF No. 38 ¶ 47.) However, "Warden Watson took no action to correct the violations." (ECF No. 38 ¶ 47.)

On June 31, 2022, Phoenix "sent Warden Miller a letter regarding the abuse by his staff, lack of medical care, and violations to my 8th Amendment rights and ADA rights for my hearing

issues." (ECF No. 38 ¶ 49.) On September 27, 2022, Phoenix wrote a letter to "Warden Miller, Asst. Warden Oates, Operations Harris, Schnur, Dr. Harris, Harold Clarke, and Mark Amonette addressing the deprivation to my medical care and breach of contract," and "discuss[ed] the lack of medical care for hearing loss and lack of hearing aids as well as several other medical issues I was not receiving proper medical care for," however, Phoenix "did not receive corrections to [his] care or rights." (ECF No. 38 ¶ 51.) "On Nov. 3, 2022, [Phoenix] wrote Operations Harris letter," along with Defendants Miller, Oates, Schnur, Clarke, and Amonette, "about the deprivations to my medical care, retaliation by staff and no[] help from the Administration." (ECF No. 38 ¶ 52.) The letter "detail[ed] the medical issues including my hearing loss and lack of hearing aids," but "[n]o response or corrections [was] offered . . . and my issues were ignored." (ECF No. 38 ¶ 52.)

On February 24, 2023, Phoenix "sent a letter to Miller, Clarke, Mrs. Harris, and Schnur and others the for continued lack of medical . . . care and retaliation from medical staff and administration staff despite several admin meetings. In this letter I discuss the lack of medical care and lack of hearing aids for my hearing loss and tinnitus. No corrections . . . [were] made." (ECF No. 38 ¶ 53.) On March 23, 2023, Phoenix "wrote a certified letter to Mark Amonette for the lack of medical care I was receiving by facility medical staff and asked him for corrections to my care," and Phoenix "discuss[ed] hearing loss and not being provided hearing aids according to my two hearing tests. . . . No corrective measures were taken by Amonette." (ECF No. 38 ¶ 54.)

In June of 2025, Phoenix was released from incarceration. (*See* ECF No. 60.)

### E. **Phoenix's Claims for Relief**

In his Complaint, Phoenix raises the following claims for relief:

Claim One:    Defendants violated Phoenix's Eighth Amendment rights "for their actions . . . on not making corrections to the violations" and "for not providing medical care or medical aids for his serious medical condition of hearing loss and tinnitus . . . ." (ECF No. 38 ¶ 57; *see id.* at 14–19)

Claim Two:    Defendants violated Phoenix's rights under the Americans with Disabilities Act ("ADA") "due to staff not providing the necessary and prescribed hearing aids for his hearing loss . . . ." (ECF No. 38, at 19.)

Phoenix seeks monetary damages. (ECF No. 38, at 19.)

## III. ANALYSIS

### A. **No Supervisory Liability**

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

As a preliminary matter, Phoenix only identifies Defendant Herrick in his list of Defendants but then fails to identify him in the body of his complaint where he details the

meetings, grievances, and letters he drafted. Phoenix fails to allege facts indicating that Defendant Herrick personally participated in any violation of his rights.[9] *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." (citing *Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968))). Thus, for this reason alone, any claim against Defendant Herrick will be DISMISSED.[10]

Second, to the extent that Phoenix intends to impose liability on Defendants solely because of their role in VDOC administration[11] under a theory of *respondeat superior*, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[12]  Contrary to Phoenix's suggestion, none of the

---

[9] At most, like the other Defendants, Phoenix vaguely indicates under his statement of Claim One that Defendant Herrick was the "Health Services Director who was made personally aware of violations to Phoenix's 8th Amendment rights violations through letters and the grievance system requesting corrections to the violations but Herrick ignored the pleas for help and provided no corrections to the violation of rights." (ECF No. 38, at 2; *see also id.* at 16.) Even if Phoenix somehow alleged personal involvement by Defendant Herrick, as discussed below in conjunction with the other Defendants, Phoenix fails to plausibly allege an Eighth Amendment claim against him.

[10] While this dismissal would ordinarily be without prejudice, any claim against Defendant Herrick can also be dismissed for the reasons discussed in Part III B & C.

[11] According to Phoenix, Harold W. Clarke is the Director of the VDOC; Dr. Mark Amonette is Chief Medical Director of the VDOC; Steve Herrick is the Director of Health Services of the VDOC; Darrell Miller is the Warden of Deerfield Correctional Center; Dara Watson is the Warden of St. Brides Correctional Center; Jerry D. Oates is the former Assistant Warden at Deerfield Correctional Center; Mr. Terry is the Assistant Warden of St. Brides Correctional Center; Mrs. Shaw is the Americans with Disabilities Act ("ADA") Coordinator at Deerfield Correctional Center; Mrs. Abrams-Godfrey is the St. Brides American with Disabilities Act Coordinator; J. Harris is the Deerfield Correctional Center Operations Manager. (ECF No. 38, at 2–5.) S. Ridely, who is an RN, is discussed separately.

[12] To the extent that Phoenix contends that Defendants are somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his

Defendants are liable simply because they supervised other individuals who may have violated his rights. *See Vinnedge*, 550 F.2d at 928. Accordingly, any claim based on supervisory liability will be DISMISSED.[13]

## B. No Violation of the Eighth Amendment Claim (Claim One)

### 1. Eighth Amendment Standard

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been

---

duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted). Phoenix fails to allege facts that support any one of these three factors.

[13] To the extent that Phoenix argues that Defendants were responsible for policies or procedures that led to his allegedly inadequate medical care, such a claim would fail. To state such a claim, Phoenix must plead facts indicating that: (1) Defendants had an official policy or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifference to Phoenix's Eighth Amendment rights; and, (3) that this policy or custom caused or contributed to the cause of Phoenix's allegedly inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). Phoenix again fails to allege any one of these three factors.

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

In the context of delayed medical care, the objective-prong analysis does not end there. In addition to demonstrating that a medical need that was objectively serious, a plaintiff must also establish that the delay in the provision of medical care "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)); *see Webb v. Hamidullah*, 281 F. App'x 159, 165 (4th Cir. 2008). "[T]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. 2012) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating

14

same).  Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).  Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).  Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04).  In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).  Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

## 2. <u>Phoenix Fails to Satisfy the Objective Prong</u>

The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" may contribute to an Eighth Amendment claim). The United States Court of Appeals for the Fourth Circuit has held that "under [the] appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need." *Large v. Wash. Cty. Det. Ctr.*, No. 90–6610, 1990 WL 153978, at *2 (4th Cir. Oct. 16, 1990). However, "not all hearing loss amounts to a serious medical condition." *Gilmore v. Hodges*, 738 F.3d 266, 276 (11th Cir. 2013). Indeed, "if a plaintiff can carry on a normal conversation and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need." *Id.* at 276–77 (citations and internal quotation marks omitted).

Phoenix fails to allege facts to satisfy the objective prong of the Eighth Amendment inquiry. As noted above, while hearing loss and tinnitus might plausibly result in a sufficiently serious harm under the Eighth Amendment, Phoenix fails to allege any such injury here. *See Hanrahan v. Mennon*, 470 F. App'x 32, 33 (2d Cir. 2012) (explaining that a condition is sufficiently serious if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain") (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Although Phoenix attempts to obscure this detail, Phoenix was provided with one hearing aid in 2022. Indeed, Phoenix alleges no facts indicating that he suffered any injury, much less a serious or significant injury, from Defendants' failure to provide him with two hearing aids. Tellingly, at most, Phoenix vaguely states that due to the Defendants' actions, he "suffered further hearing

16

loss and further increased tinnitus causing headaches." (ECF No. 38, at 18.)[14]  In addition, Phoenix outlines many meetings that he had with Defendants to discuss his medical treatment, identifies at least fifty-five medical appointments, and at no time indicates that he experienced problems conversing or communicating in the meetings or appointments. *Cf. Gilmore*, 738 F.3d at 276–77 ("[I]f a plaintiff can 'carry on a normal conversation' and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need" (citations omitted)); *Chacon v. Ofogh*, No. 7:08cv46, 2008 WL 4146142, at *9–10 (W.D. Va. Aug. 21, 2008) (explaining that the ability to "carry on a normal conversation" . . . suggests . . . that [plaintiff's] hearing is not so impaired as to rise to the level of a serious medical need" (citation omitted).).  Nor does the fact that an audiologist recommended or prescribed two hearing aids, standing alone, turn hearing loss or tinnitus into a serious or significant medical need. *See Chacon*, 2008 WL 4146142, at *4 (citing *Large*, 1990 WL 153978, at *2).

Moreover, from his Amended Complaint, it is evident that Phoenix was seen and examined many times for his hearing loss and tinnitus, (*see, e.g.*, ECF No. 38 ¶ 10), was provided with one hearing aid in 2022 (ECF No. 38 ¶ 8; *see* ECF No. 1, at 8), and received two hearing aids on August 22, 2024. (ECF No. 38, at 7.)  Therefore, Phoenix's Eighth Amendment claim truly arises from the delay in his receipt of two hearing aids.  However, Phoenix also alleges no significant adverse effects from the delay in receiving two hearing aids. *See Mata*, 427 F.3d at 751.  At most, as stated above, Phoenix indicates that he "suffered further hearing loss and further increased tinnitus causing headaches." (ECF No. 38, at 18.)  This is insufficient

---

[14] In his response to the Motion to Dismiss, Phoenix claims for the first time that "tinnitus . . . was the cause of several earaches and horrible headaches." (ECF No. 62, at 10.) Phoenix may not raise new factual allegations in a response to a Motion to Dismiss that he failed to allege in his Amended Complaint to escape dismissal of his claim.

to plausibly suggest that he suffered any substantial harm from the delay in receiving two hearing aids. Thus, Phoenix fails to allege facts indicating that the delay in receipt of two hearing aids itself caused him substantial harm. *See Webb*, 281 F. App'x at 166 (explaining that an "Eighth Amendment violation only occurs . . . if the delay results in some substantial harm"); *Shabazz*, 2012 WL 442270, at *5 (explaining that substantial harm requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain.") In sum, because Phoenix alleges no serious or significant injury, he fails to satisfy the objective prong of the Eighth Amendment inquiry. For this reason alone, Phoenix's claim of denial of adequate medical care against Defendants will be DISMISSED for failure to state a claim.

Although the Court's discussion of Claim One could end here, Phoenix also fails to satisfy the subjective prong of the deliberate indifferent inquiry.

### 3. **Phoenix Fails to Satisfy the Subjective Prong**

In Claim One, Phoenix indicates that Defendants are liable to him because he notified them of his ongoing belief that he was receiving inadequate medical care through grievances, letters, and administrative meetings, and they purportedly failed to remedy it. Phoenix wrote various grievances and letters to Defendants as outlined above.[15] While an inmate's letters to prison administrators may establish a basis for § 1983 liability, the plaintiff must allege facts that plausibly posit "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or

---

[15] Because the allegations against each Defendant are so similar and may be dismissed for the same reasons, the Court believes it would be overly repetitive to discuss each Defendant's liability separately. With respect to each Defendant, Phoenix states that they "were deliberately indifferent to my serious medical condition of hearing loss and lack of hearing aids as he [or she] was made directly aware of the lack of medical care through" a combination of meetings, letters, grievances, request forms, and "ignored the risks of further injury and harm offering no corrections" to his medical care or his constitutional rights. (*See* ECF No. 38, 15–17.)

safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Phoenix must allege that Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F .3d 555, 561 (7th Cir. 1995)).

First, with respect to the letters, while Phoenix indicates that he mailed letters to these administrators he never indicates that the each administrator received the letter.  Nevertheless, assuming for the purposes of the Motion to Dismiss that the letters were received, Phoenix simply states that the intended recipients of the letters failed to change or intervene in his medical care generally. Phoenix describes the letters as notifying Defendants about his many medical issues and issues such as his perceived "lack of medical care" or "violations of his rights." (*See, e.g.*, ECF No. 38 ¶¶ 43, 44.)  While Phoenix indicates that he mentioned his hearing loss and tinnitus in some his letters, this particular complaint was undoubtedly just one in a litany of other complaints about his medical care. *See supra* p.4 n.4.  Simply because Phoenix declared his delay in receipt of hearing aids a violation of his Eighth Amendment rights in meetings, in letters, and in his grievances, does not make it so.  Phoenix's allegations fall short of permitting the conclusion that his letters placed Defendants on sufficient notice of an excessive risk of harm to his health or safety with respect to his hearing loss and tinnitus. *See Vance*, 97 F.3d at 994.  As such, Phoenix's limited factual allegations against Defendants fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683).  For this reason alone, Phoenix's Eighth Amendment claims against Defendants based on the letters may be dismissed.

With respect to the grievances, Phoenix alleges that the wardens, Defendant Watson found a Level I grievance "unfounded" in which Phoenix complained about "no hearing aids provided," (ECF No. 38 ¶ 25), and that he wrote informal complaint complaining about Defendant "Miller's deliberate indifference and not making corrections to the violations of his rights and lack of medical care," but he "was still offered no help or corrections despite grievance and administrative meeting with Miller." (ECF No. 38 ¶ 39.) With respect to the assistant wardens, Phoenix contends that Defendant Terry responded to his written complaint "stating a quote was provided for the order of the hearing aids in October of 2023 and despite numerous attempts to contact VCU for an appointment no appointment was made with this provider," (ECF No. 38 ¶ 27), and that Defendant Oates denied two regular grievances where the underlying informal complaint had been responded to by medical. (ECF No. 38 ¶¶ 12, 35.) Phoenix contends that he sent a written complaint to which Defendant Abrams-Godfrey who responded "that the Warden, Watson, sent a request to SIU," (ECF No. 38 ¶ 26), an ADA request to which Defendant Abrams-Godfrey "denied despite stating they were trying to contact VCU about the hearing aids," (ECF No. 38 ¶ 27), and a facility request "requesting to speak to [RN Marinos] regarding the lack of ADA and medical help for the hearing aids to which [Defendant Abrams-Godfrey] stated write a letter." (ECF No. 38 ¶ 28.)

To the extent Phoenix seeks to hold Defendants liable simply for their involvement in the grievance review process, Phoenix's conclusory allegations fail to state a claim. As an initial matter, "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

20

Because Phoenix enjoys no constitutional right to participate in grievance proceedings, his allegation that Defendants improperly upheld the denial of written complaints, denied regular grievances, or somehow responded unfavorably to Phoenix is legally frivolous. *See Banks v. Nagle*, Nos. 3:07CV–419–HEH, 3:09CV14, 2009 WL 1209031, at *3 (E.D. Va. May 1, 2009) (citation omitted); *see also DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted) (observing that "a supervisor's after–the–fact denial of a grievance falls short of establishing § 1983 liability"). Indeed, simply "[r]uling against a prisoner does not cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007); *cf. Chamberlain v. Clarke*, No. 7:14–cv–00013, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non–starter").

In addition, while Phoenix believes that he was receiving inadequate medical care and lodged the same complaint in his letters, grievances, and during alleged administrative meetings with staff, Phoenix's allegations reflect that he was receiving a great deal of medical care for his many ailments[16] including for his tinnitus and hearing loss. Defendants knew that Phoenix was frequently seen by and treated by the medical department. According to Phoenix's Amended Complaint, between February of 2022 and August of 2024, Phoenix saw medical providers at least fifty-five times. (ECF No. 38 ¶ 10.) Phoenix was under the care of many medical providers, and Defendants, who are all either in supervisory, administrative, or non-medical roles

---

[16] For example, between 2021 and 2024, Phoenix "received pain medication, had x-rays, two MRIs, saw an onsite orthopedist and two orthopedic specialists and a neurologist, had elbow surgery, had twenty-eight physical therapy sessions, and then had a complete shoulder replacement surgery." *Phoenix v. Clarke*, No. 3:23cv276, 2025 WL 259382, at *7 (E.D. Va. Jan. 21, 2025). Phoenix was also treated during this same period for "celiac disease, a torn bicep tendon, neck and back injuries, hearing issues, breathing issues, dental problems and other ailments" and "was seen scores of times for these medical issues." *Phoenix v. Vital Core Health Strategies*, No. 3:23cv357, 2025 WL 2313208, at *3 (E.D. Va. Aug. 11, 2025) (citation omitted).

were entitled to rely on the medical judgment of those providers with respect to the appropriate treatment of Phoenix. *Iko*, 535 F.3d at 242 (holding that once an inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))).

Phoenix faces a fairly onerous task in alleging deliberate indifference in the present circumstances because reliance upon the expertise of prison medical providers in treating inmates is generally appropriate for supervisory officials, such as Defendants, in their role as administrators. To overcome such reliance, Phoenix must allege facts indicating that Defendants knew that the care provided by medical personnel was so obviously incompetent that it posed a substantial risk of harm to his health. *See Miltier*, 896 F.2d at 854–55. Quite simply, he has not. While Phoenix believes that his medical care was inadequate and disagrees with the course and timing of treatment, his own allegations reflect that his medical care was clearly not so obviously incompetent to pose a substantial risk of serious harm to his health. Rather, Phoenix's allegations show that he received constitutionally adequate care for his non-emergent hearing loss and tinnitus.[17] Defendants, as supervisory staff, or other non-medical officials, were entitled to rely on the medical opinions and course of treatment prescribed by the many medical providers.[18] Accordingly, Phoenix fails to plausibly allege that Defendants were deliberately

---

[17] From his many lawsuits filed in this Court, it is evident that medical providers and VDOC staff have expended a great deal of time on Phoenix's abundant medical issues. The Court reminds Phoenix that the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable," *Bowring*, 551 F.2d at 48, and he has no right "to have all his needed elective medical care performed while in custody . . . ." *Kersh*, 501 F.2d at 589.

[18] Although Phoenix desired the immediate receipt of two hearing aids and disagreed with the onsite medical department's initial assessment that he only required one hearing aid— which he received in 2022—his disagreement with medical providers is not sufficient to state a

indifferent to his hearing loss and tinnitus. In sum, Phoenix fails to state an Eighth Amendment claim against Defendants and Claim One will be DISMISSED for failure to state a claim.[19]

### C. ADA Claim (Claim VIII)

#### 1. Title II of the Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (quoting 42 U.S.C. § 12132). A state prison is a "public entity" for purposes of Title II of the ADA. *See United States v. Georgia*, 546 U.S. 151, 154 (2006). To state a claim under the ADA, a plaintiff must allege facts plausibly asserting that:

> (1) [he or] she has a disability, (2) [he or] she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) [he or] she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his or] her disability.

---

cognizable constitutional claim and certainly is insufficient to show administrators and non-medical staff were deliberately indifferent. *See Wright*, 766 F.2d at 849 (citation omitted). Phoenix also fails to show that Defendants were deliberately indifferent for failing to intervene in his medical care so that he would receive two hearing aids faster. "Medical care is often not immediate" and "actual treatment may not follow immediately upon medical attention . . . . It would be wrong to turn the everyday inconveniences and frictions associated with seeking medical care into constitutional violations whenever they occur within the prison walls." *Moskos v. Hardee*, 24 F.4th 289, 297–98 (4th Cir. 2022).

[19] The only Defendant who may be medical staff is Defendant Ridely, who Phoenix identifies as "the Health Authority and nurse at St. Brides Correctional Center." (ECF No. 38 ¶ 3.) Phoenix claims that she was present "at different administrative meetings" and "was present during a video conference recorded interview where facility investigator was present with Dr. Houston and the hearing loss was discussed." (ECF No. 38 ¶¶ 11–12.) It is unclear whether, as a registered nurse, she treated patients or was solely involved in administrative tasks. To the extent that Defendant Ridely was somehow involved in Phoenix's medical treatment, the allegations are insufficient to plausibly suggest that Defendant Ridely was personally involved in the deprivation of Phoenix's rights, much less was deliberately indifferent to his serious medical needs. Accordingly, Claim One will also be DISMISSED for failure to state a claim against Defendant Ridely.

*Constantine*, 411 F.3d at 498 (citations omitted). "A plaintiff is 'qualified' if [he or] she is 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* (quoting 42 U.S.C. § 12131(2)).

Defendants argue that Phoenix's ADA claim fails for several reasons:  1) Phoenix failed to name a proper defendant in his Amended Complaint; 2) his allegations show no violation of his rights under the ADA; 3) to the extent that Phoenix seeks monetary damages, that is not a remedy available under the ADA; and finally, 4) any claim for injunctive relief is moot. (ECF No. 49, at 18–19.)  As discussed below, Phoenix's claim may be dismissed for all of these reasons.

### 2. <u>The ADA Does Not Provide a Remedy Against Individual Defendants</u>

Defendants correctly assert that the ADA does not provide a cause of action against Defendants in their individual capacities.[20] *See Barnes v. Young*, 565 F. App'x 272. 273 (4th Cir. 2014); *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010).  In his response, Phoenix attempts to remedy this deficiency by stating for the first time, that "[b]oth ADA Shaw and ADA Abrams-Godfrey refused me an accommodation in writing" and "[t]hese two actors were acting in their official capacities and duties but as they acted individually these suits can still survive because the proper channels and personal [sic] were notified of disability and need

---

[20] Phoenix did not identify whether Defendants were named in their individual or official capacities.  Defendants argue that "no claim under the ADA can lie against the individual Defendants to this case." (ECF No. 49, at 18.)  To the extent that Defendants intended to argue that no ADA claim may be brought against a Defendant in their *individual* capacity, they are correct.

for the accommodation but denied the accommodation in their official capacity." (ECF No. 62, at 14–15.) The Court generously construes Phoenix to name Defendant Shaw and Defendant Abrams-Godfrey in their official capacity, and those claims are addressed in sections three through five below. However, any ADA claim against Defendants in their individual capacity will be DISMISSED. Accordingly, the ADA claim against Defendants Clarke, Herrick, Amonette, Miller, Watson, Oates, Terry, and Ridely will be DISMISSED because Phoenix failed to name them in their official capacity.[21]

### 3. <u>The ADA May Not Be Used to Challenge Medical Judgments</u>

The ADA "was never intended to apply to decisions involving . . . medical treatment." *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (citations omitted); *see also Fitzgerald v. Corrs. Corp. of Am.*, 403 F.3d 1134, 1143–44 (10th Cir. 2005) (observing that "purely medical decisions . . . do not ordinarily fall within the scope of the ADA"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (citations omitted) (concluding that ADA claims "cannot be based on medical treatment decisions"). Indeed, the ADA is not a vehicle for disgruntled patients to challenge the medical judgments of their healthcare providers. *See Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006) (noting that "[w]hen the decision being challenged is simply a reasoned medical judgment with which the patient disagrees," the ADA does not apply (internal quotation marks and citation omitted)). Certainly, "[t]he ADA does not create a remedy for medical malpractice." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). To the contrary, the ADA "is not violated by a prison simply failing to attend to the medical needs of its disabled prisoners." *Spencer v. Easter*, 109 F. App'x 571, 573 (4th Cir. 2004) (quoting *Bryant*, 84 F.3d at 249).

---

[21] Because Phoenix's ADA ultimately lacks merit, the Court dismisses the claim against these Defendants with prejudice.

In this instance, Phoenix's claim traces its roots to various medical decisions about the timing of the provision of two hearing aids. Phoenix's arguments are plainly based on the premise that the staff "offered no corrections to my medical care." (*See, e.g.*, ECF No. 38, at 17.). Phoenix attempts to use the ADA as a backdoor to attack the medical decisions made during his incarceration in the VDOC, which is impermissible. Thus, once again, for this reason alone, Phoenix's ADA claim must be DISMISSED for failure to state a claim.

However, even if Phoenix's ADA claim is based on something other than the underlying dispute regarding the appropriate medical treatment for his hearing loss and tinnitus, as discussed below, his claim still fails because he has not alleged all of the essential elements of an ADA claim.

### 4. **Phoenix's ADA Claim Fails on the Merits**

At best, Phoenix alleges that two hearing tests noted that he had "significant hearing loss in his left ear and impaired hearing in his right ear with tinnitus." (ECF No. 38, at 6.) For the purposes of this Motion to Dismiss, the Court assumes without deciding that this hearing loss qualifies as a disability and Phoenix satisfies the first element of an ADA claim. However, the Court has combed through the Amended Complaint and finds no allegation that he was excluded from, or was denied the benefit of a public service, program, or activity on the basis of his hearing loss due to the provision of hearing aids. *Constantine*, 411 F.3d at 498 (citations omitted). At best, Phoenix states "he could not properly hear what was going on around me and missed important information." (ECF No. 38, at 19.) Moreover, Phoenix's allegations reflect countless meetings with various VDOC officials and medical staff and not once does he indicate that he had any trouble hearing or communicating.[22] Phoenix fails to satisfy the second and third

---

[22] In response to Defendants highlighting Phoenix's failure to identify a service, program, or activity that he was excluded from on the basis of his hearing loss, for the first time in his

element of an ADA claim and for yet another reason, Claim Two will be DISMISSED for failure to state a claim.

### 5. **Monetary Damages Are Not Available**

Defendants also argue that sovereign immunity shields them from liability for Phoenix's ADA claim for monetary damages. (ECF No. 49, at 19.) "[I]n the context of state prisons, Title II [of the ADA] validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the States' only 'for conduct that *actually* violates the Fourteenth Amendment.'" *Chase v. Baskerville*, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)), *aff'd*, 305 F. Appx 135 (4th Cir. 2008).[23]  In Claim Two, Phoenix claims that Defendants violated his rights under the ADA "due to staff not providing the necessary and prescribed hearing aids for his hearing loss . . . ." (ECF No. 38, at 19.) This claim is based on the same underlying conduct as his Eighth Amendment claim. However, as discussed above, Phoenix fails to state an Eighth Amendment claim against Defendants. Accordingly, the alleged violations of the ADA do not rise to the level of a constitutional violation. Therefore, sovereign immunity is not disturbed, and the Defendants named in their official capacity are immune from suit for money damages here. *See Chase*, 508 F. Supp. 2d at 506; *Richardson v. Clarke*, 3:18CV23–HEH, 2020 WL 4758361, at *6 (E.D. Va.

---

response, Phoenix claims, "he had a hard time hearing especially in the loud environment of prison. Simple conversations were often missed and must be repeated." (ECF No. 62, at 11.) However, this vague statement is insufficient to show that he was excluded from, or was denied the benefit of a public service, program, or activity on the basis of his hearing loss due to a lack of hearing aids. *Constantine*, 411 F.3d at 498 (citations omitted).

[23] "[T]he Due Process Clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment." *Georgia*, 546 U.S. at 157 (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947)).

Aug. 17, 2020), *vacated in part on other grounds*, 52 F.4th 614 (4th Cir. 2022).  Once again, Claim Two will be DISMISSED for failure to state a claim and as legally frivolous.[24]

### IV.  Conclusion

The Motion to Dismiss (ECF No. 48) will be GRANTED.  Claims One and Two will be DISMISSED against Defendants Clarke, Amonette, Herrick, Miller, Watson, Oates, Terry, Shaw, Abrams-Godfrey, Harris, and Ridely.[25]

An appropriate Order will accompany this Memorandum Opinion.

Date:  1/5/2026
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge

---

[24] Defendants filed the Motion to Dismiss while Phoenix was still incarcerated and noted that when Phoenix received his hearing aids in August of 2024, and when he was transferred away from Deerfield Correctional Center, his claim became moot.  (ECF No. 49, at 20. However, since that time, Phoenix has been released from incarceration.  While the Court does not believe that Phoenix asks for injunctive relief, to the extent he does, [a]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007); *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Taylor v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986)).  Because Phoenix has been released from incarceration any lurking claim for injunctive relief will be DISMISSED as moot.

[25] The only remaining Defendants in the action are the medical providers:  Alvin Harris, Steven Marinos, FNP, J. Schnur, and K. Sharma.